**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANDREW FREEMAN<br>1441 Butler St<br>Easton, PA 18042 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| v. | : | CASE NO.: |
| | : | |
| FRESHPET, INC.<br>1450 US-206 | : | |
| Bedminster NJ 07921. | : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendant | : | |
| | : | |

**CIVIL ACTION COMPLAINT**

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1.      This action has been initiated by Andrew Freeman (hereinafter "Plaintiff") against Freshpet, Inc. ("Defendant"). Plaintiff asserts violations of Title VII of the Civil Rights Act ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq.*), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" - 42 U.S.C. § 1981), the Americans with Disabilities Act, as Amended ("ADA" – 42 U.S.C. §§ 12101 *et. seq.*), the Pennsylvania Human Relations Act ("PHRA")[1], the Fair Labor Standards Act ("FLSA" - 29 U.S.C. 201, *et. seq.*), and applicable state wage laws. Plaintiff contends he was subjected to discriminatory and retaliatory mistreatment while employed (as explained *infra*) and that he was unlawfully terminated from his employment.

---

[1] Plaintiff will seek leave to amend the instant lawsuit to add claims under the PHRA once properly administratively exhausted. Plaintiff was however required to initiate this lawsuit pursuant to a right-to-sue letter prior to such PHRA exhaustion. Plaintiff's PHRA claims will mirror identically his Title VII and ADA claims, and they are analyzed identically in the Third Circuit as well.

**JURISDICTION AND VENUE**

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. Plaintiff's state claims asserted herein are proper under this Court's ancillary or supplemental jurisdiction to hear state claims arising out of the same common nucleus of operative facts as those set forth in Plaintiff's federal claims.

3.      This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this District because the actions underlying this case occurred in this District, and Defendant is deemed to reside where it is subject to personal jurisdiction.

**PARTIES**

5.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.      Plaintiff is an adult male residing at the above-captioned address.

7.      Defendant is a pet food company that manufactures fresh wet food for dogs and cats.

8.      Headquartered in Bedminster, New Jersey, Defendant also has manufacturing plants located at 176 N Commerce Way, Bethlehem, PA 18017 (the physical location of Plaintiff's former worksite) and 4800 Sterilite Drive, Ennis, TX 75119.

9.      At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.      Plaintiff is a Black (African American) male.

12.      Plaintiff was employed by Defendant for approximately10 months (commencing on January 2, 2024) until being terminated on or about November 22, 2024.

13.      Plaintiff physically worked for Defendant at 176 N Commerce Way, Bethlehem, PA 18017, a site known to Defendant as Kitchens Plant 2 (Kitchens Plant 1 is also located at the same address).

14.      Plaintiff held the position of Maintenance Technician throughout his employment with Defendant.

15.      Plaintiff's duties as a Maintenance Technician included overnight preventative maintenance on plant machinery, such as oiling, greasing, and cleaning. He also repaired any broken machinery.

16.      Beginning on his hire date, Plaintiff's supervisor was Johnny Villamil, Sr. ("Villamil")(Hispanic).

### Plaintiff's Disabilities and Need/Requests for Reasonable Accommodations

17.      Plaintiff suffers from anxiety and depression and had made Defendant aware of his condition.

18.     Plaintiff's disabilities can, at times, limit his daily life activities, such as by causing irritability, low mood, inability to focus, inability to remember or follow instructions, and disorientation during flare-ups.

19.     Plaintiff is attending therapy and taking medication to manage his symptoms, but he still experiences flare-ups.

20.     Plaintiff requested reasonable accommodations for his disabilities in the form of occasional time off whenever he experienced a flare-up of symptoms.

21.     By way of example only, in or about February or March 2024, Plaintiff experienced a flare-up of his depression and anxiety and took approximately three (3) consecutive days off from work.

22.     Following this short absence for his mental health, Plaintiff explained to Defendant's management that he needed those days off for his depression and anxiety.

23.     By way of further example, Plaintiff also left early during his tenure with Defendant due to a flare up of his disabilities.

24.     For example, on or about March 31, 2024, Plaintiff was suffering a flare-up of his depression and anxiety symptoms due to the death of his father.

25.     Villamil reached out to Plaintiff and noticed that he was acting differently, and asked Plaintiff if he wanted to go home early.

26.     Plaintiff explained to Villamil why he was not himself and agreed to go home early on or about March 31, 2024, with the express permission of Villamil.

27.     In addition to leaving early for reasons related to his disabilities, Plaintiff also left early on one occasion in June of 2024 for a family emergency.

28.    At the time of Plaintiff's aforesaid absences or early leaves, Defendant did not issue him any discipline or warn him that he would be disciplined for the same.

## Racial Discrimination

29.    Throughout Plaintiff's employment with Defendant, Villamil made racist comments towards Plaintiff, Black employees, and Black people in general, including:

      i.    He does not want Black people working for him because "Black people don't work" and "Black people are lazy."

     ii.    To Plaintiff and another Black employee, he stated: "This is what I mean when I say you niggers are lazy."

30.    Villamil also treated Black employees with disproportionate hostility compared to other employees.

31.    In or about August or September 2024, while Plaintiff and another Black employee were on their lunch break in the break room, a maintenance call was made.

32.    Several other non-Black employees, who were not on break, were also present at the time, were on duty, and were available to respond to the call.

33.    Despite the presence of the other available non-Black employees, Villamil entered the break room and chastised Plaintiff and his coworker for not responding to the call.

34.    It was during this aforesaid incident that Villamil stated to Plaintiff and his fellow Black co-worker: "This is what I mean when I say you niggers are lazy."

35.    Plaintiff objected to Villamil's comments as he was making them.

36.    Plaintiff and Villamil then had a disagreement as to the nature of Villamil's comments. Villamil held his remarks out to be jokes; however, Plaintiff was unsettled by the language used and did not take them as humorous or light-hearted.

**Wage and Hour Violations**

37.     In addition to the ongoing racial discrimination that Plaintiff was subjected to, Plaintiff also avers that Defendant's management, including Villamil, violated state and federal wage laws.

38.     During Plaintiff's employment with Defendant, he was at all times a non-exempt employee who was paid an hourly rate of 36.55 per hour.

39.     Prior to September 2024, Plaintiff's work schedule usually consisted of 2 12-hour shifts.

40.     Starting in or about September 2024 and for most of the remaining weeks until his termination, Plaintiff was scheduled to work over 40 hours per week.

41.     During this relevant time period, Plaintiff voluntarily signed up for overtime on a rotating schedule.

42.     During weeks that he would work overtime, he would accept additional 12-hour shifts on top of his usual 24 hours total per week.

43.     Plaintiff usually accepted 2 additional 12-hour shifts for a total of at least 48 hours per week.

44.     Additionally, during the period that Plaintiff was working overtime (discussed *supra*), he would often clock in 2 hours early at 4 A.M. instead of 6 A.M., causing him to accrue more hours (for a total of 14 hours on some days).

45.     Plaintiff and Defendant agreed that he would be paid for all hours that he worked and overtime compensation at a rate of time and one half for any hours worked over 40 hours in one week.

46.     Towards the end of his employment with Defendant, Plaintiff believed that Villamil was unlawfully deducting his pay by changing his clock in/clock out times (without Plaintiff's consent), resulting in a failure to pay proper overtime compensation for weeks in which Plaintiff had worked over 40 hours in one week.

47.     Plaintiff discovered that Villamil had been deducting his overtime in the first week of November 2024.

48.     Plaintiff used the Automatic Data Processing ("ADP") system, Defendant's tracking system for hours worked, and saw in November of 2024 that his clock-in times were always at 6am, even though he sometimes clocked in at 4am.

49.     Immediately after discovering what he believed to be wage and hour/overtime violations by Villamil in the first week of November 2024, Plaintiff submitted a complaint about the same to Stephanie Barens ("Barens") in Defendant's Human Resources Department, indicating that he believed his clock in and clock out times were being unilaterally changed by Villamil, resulting in Defendant's failure to pay him proper wages and overtime compensation.

**Retaliation and Failure to Accommodate**

50.     On September 4, 2024, shortly following Plaintiff's aforesaid disagreement with Villamil, regarding Villamil's clear discriminatory comments, Defendant issued a "final written warning" to Plaintiff for attendance.

51.     To Plaintiff's surprise, the final written warning referred to Plaintiff's absences and early leave days from months prior that were primarily related to his disability (discussed *supra*), which had never been addressed with any kind of disciplinary action before.

52.     Then, on November 19, 2024, after Villamil learned of the wage and hour/overtime complaints that Plaintiff made against him (discussed *supra*), Villamil called Plaintiff into his office to discuss the matter.

53.     During this conversation, Plaintiff confirmed to Villamil that he had submitted a complaint for wage and overtime violations against Villamil and outlined why he believed the same to be true.

54.     Villamil was dismissive of the substance of Plaintiff's aforesaid complaints and simply said that he did not have "time for this" and demanded that Plaintiff go home, to which Plaintiff followed his instructions.

55.     The day after this hostile exchange, on November 20, 2024, Defendant terminated Plaintiff via a termination letter which listed, among the reasons for his termination, that Plaintiff left early from his shift on November 19, 2024, that this early leave was "not excused," and that Plaintiff was on a final warning for attendance (discussed *supra*).

56.     When Plaintiff defended his early leave from November 19, 2024, and stated that Villamil demanded that he go home during their in-office conversation, Villamil conveniently denied any responsibility for Plaintiff's early leave on November 19, 2024.

57.     Plaintiff's termination rationale is absurd and lacks credibility, as:

    a.  Plaintiff did not leave early on November 19, 2024 of his own volition or will; instead, Defendant through Villamil forced Plaintiff into a compromising position by ordering Plaintiff to take an action (leave work) that resulted in his termination;

    b.  The "final written warning" was only issued after Plaintiff objected to Villamil's use of a derogatory and discriminatory comment;

8

c.  The alleged violations that precipitated the "final written warning" occurred months prior to the issuance of the warning, but at the time of the alleged violations, no warnings were issued, despite Defendant's knowledge of them;

d.  Defendant counted ADA-qualifying time off (absences and early leaves) against Plaintiff in making the decision to discipline him and thus failed to accommodate his disabilities;

e.  Defendant made the decision to terminate Plaintiff in close temporal proximity to Plaintiff filing a complaint concerning overtime violations and objecting to Villamil's racially discriminatory behavior; and

f.  Plaintiff was aware of another employee named Julian (last name unknown) who complained to management about Villamil's racist conduct. That employee was terminated shortly afterwards.

**Count I**
**Violations of Title VII**
**([1] Racial Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

58.  The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

59.  Plaintiff believes and avers that he was subjected to a hostile work environment because of his race and/or objections to racial discrimination through discriminatory/derogatory comments, pretextual admonishment, and disparate treatment.

60.  In close proximity to Plaintiff's objections to Defendant's racially discriminatory harassment, he was issued a "final warning" for attendance related to absences and/or early leaves that occurred significantly prior to the write-up, and which he had never been warned about or issued disciplined for previously.

61. Plaintiff was then abruptly terminated for completely pretextual and selectively enforced reasons.

62. Plaintiff therefore believes and avers that his race was a motivating or determinative factor in Defendant's decisions to issue him a final written warning and terminate his employment.

63. Plaintiff also believes and avers that he was issued a final written warning and ultimately terminated in retaliation for objecting to racial discrimination.

64. The adverse actions taken against Plaintiff as outlined herein because of his race and/or in retaliation for his objections to racial discrimination constitute violations of Title VII.

**Count II**
**Violations of Title VII of 42 U.S.C. Section 1981**
**([1] Racial Discrimination; [2] Retaliation; [3] Hostile Work Environment)**

65. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

66. Plaintiff believes and avers that he was subjected to a hostile work environment because of his race and/or objections to racial discrimination through discriminatory/derogatory comments, pretextual admonishment, and disparate treatment.

67. In close proximity to Plaintiff's objections to Defendant's racial discriminatory harassment, he was issued a "final warning" for attendance related to absences and/or early leaves that occurred significantly prior to the write up and which he had never been warned about or issued disciplined for previously.

68. Plaintiff was then abruptly terminated for completely pretextual and selectively enforced reasons.

69.    Plaintiff also believes and avers that he was issued a final written warning and ultimately terminated because of his race and/or in retaliation for complaining of racial discrimination.

70.    The adverse actions taken against Plaintiff as outlined herein because of his race and/or in retaliation for his objections to racial discrimination constitute violations of Section 1981.

## Count III
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Failure to Accommodate )**

71.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

72.    Plaintiff believes and avers that his actual, perceived and/or record of disabilities were a motivating and/or determinative factor in Defendant's decisions to issue him a final warning and terminate his employment.

73.    Plaintiff also believes and therefore avers that Defendant issued him a final written warning and terminated his employment in retaliation for engaging in protected activity under the ADA.

74.    Lastly, Plaintiff believes and avers that Defendant failed to accommodate him and counted ADA-qualifying absences and early leaves against him in making the decision to issue him a final warning and terminate his employment.

75.    These aforesaid actions constitute violations of the ADA.

## Count IV
### Violations of the Fair Labor Standards Act ("FLSA")
**(Overtime Violations)**

76.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11

77.     At all times relevant herein, Defendant has and continues to be an employer within the meaning of the Fair Labor Standards Act, 29 U.S.C. §203 ("FLSA").

78.     At all times relevant herein, Defendant to this action was responsible for paying wages to Plaintiff.

79.     At all times relevant herein, Plaintiff was employed with Defendant as "employee" within the meaning of the FLSA.

80.     The FLSA requires covered employers, such as Defendant, to minimally compensate its "non-exempt" employees, such as Plaintiff, 1.5 times the employee's regular rate of pay for each hour that the employee works over 40 in a workweek.

81.     At all times during his employment with Defendant, Plaintiff was a "non-exempt" employee within the meaning of the FLSA.

82.     During the last few months of his employment with Defendant, Plaintiff worked in excess of 40 hours per week.

83.     Plaintiff believes and avers that Defendant's management unilaterally and without his consent changed his clock in and clock out times, which resulted in Plaintiff not being properly paid for all hours that he worked in excess of 40 hours per week.

84.     Plaintiff therefore seeks all remedies permitted under the FLSA for unpaid wages, as well as penalties and interest.

## Count V
## Violations of the Pennsylvania Minimum Wage Act ("PMWA")
### (Overtime and Minimum Wage Violations)

85.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

86.    Defendant's failure to pay overtime in the aforesaid manner also constitutes a violation of the PMWA.

## Count VI
### Violation of the Pennsylvania Wage Payment Collection Law ("WPCL")
### (43 P.S. 260.3(a)-(b))

87.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

88.    Plaintiff had an agreement with Defendant whereby Defendant agreed to compensate Plaintiff for all services he performed during his employment.

89.    Plaintiff believes and avers that Defendant's management unilaterally and without his consent changed his clock in and clock out times, which resulted in Plaintiff not being properly paid for all hours that he worked.

90.    Thus, it is averred that Defendant failed to compensate Plaintiff for all wages owed during his employment.

91.    Plaintiff performed the agreed-upon services for Defendant, and Defendant failed to properly compensate Plaintiff for the services rendered as specified by the Parties' agreement and understanding (including but not limited to paying Plaintiff for all hours worked).

92.    These actions as aforesaid constitute violations of the Pennsylvania Wage Payment and Collection Law.

## Count VII
### Violations of the Fair Labor Standards Act ("FLSA")
### (Unlawful Retaliation - Wrongful Termination)

93.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13

94.     Following Plaintiff's complaints about Defendant's illegal pay practices (including failure to properly compensate him for all overtime hours worked), Defendant terminated Plaintiff's employment for completely pretextual reasons.

95.     These actions as aforesaid constitute retaliation under the FLSA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

B.     Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C.     Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D.     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E.     Plaintiff is to receive a trial by jury as requested in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:  _____
Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: May 4, 2026

15

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Andrew Freeman | : | CIVIL ACTION |
| v. | : | |
| Freshpet, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.                    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.                    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)                    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (x )

| | | |
|---|---|---|
| 5/4/2026 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

10/2024

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: __Defendants place of business__

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                                Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?   Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?   Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.   Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*                                          **B.** *Diversity Jurisdiction Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)    ☐ 1. Insurance Contract and Other Contracts
☐ 2. FELA                                                             ☐ 2. Airplane Personal Injury
☐ 3. Jones Act-Personal Injury                                        ☐ 3. Assault, Defamation
☐ 4. Antitrust                                                        ☐ 4. Marine Personal Injury
☐ 5. Wage and Hour Class Action/Collective Action                     ☐ 5. Motor Vehicle Personal Injury
☐ 6. Patent                                                           ☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Copyright/Trademark                                              ☐ 7. Products Liability
☐ 8. Employment                                                       ☐ 8. All Other Diversity Cases: *(Please specify)*_____
☐ 9. Labor-Management Relations                                            _____
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44  (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| FREEMAN, ANDREW | FRESHPET, INC. |

**(b)** County of Residence of First Listed Plaintiff   Northampton
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Somerset
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
        Plaintiff

☒ 3  Federal Question
        *(U.S. Government Not a Party)*

☐ 2  U.S. Government
        Defendant

☐ 4  Diversity
        *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**       **PERSONAL INJURY** | ☐ 625 Drug Related Seizure | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane       ☐ 365 Personal Injury - | of Property 21 USC 881 | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product          Product Liability | ☐ 690 Other |         28 USC 157 |         3729(a)) |
| ☐ 140 Negotiable Instrument |          Liability       ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &          Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
|         & Enforcement of Judgment |          Slander          Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'          Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted |          Liability       ☐ 368 Asbestos Personal | | ☐ 835 Patent – Abbreviated | ☐ 460 Deportation |
|         Student Loans | ☐ 340 Marine          Injury Product | |         New Drug Application | ☐ 470 Racketeer Influenced and |
|         (Excludes Veterans) | ☐ 345 Marine Product          Liability | | ☐ 840 Trademark |         Corrupt Organizations |
| ☐ 153 Recovery of Overpayment |          Liability    **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
|         of Veteran's Benefits | ☐ 350 Motor Vehicle       ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards |         Act of 2016 |         (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle       ☐ 371 Truth in Lending |         Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract |          Product Liability    ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** |         Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal          Property Damage |         Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise |          Injury       ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury -          Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) |         Exchange |
| |         Medical Malpractice | |         Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights    **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting       ☐ 463 Alien Detainee |         Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment       ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff |         Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/          Sentence | |         or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability |          Accommodations    ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☒ 445 Amer. w/Disabilities -  ☐ 535 Death Penalty | |         26 USC 7609 |         Act/Review or Appeal of |
| |         mployment    **Other:** | **IMMIGRATION** | |         Agency Decision |
| | ☐ 446 Amer. w/Disabilities -  ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| |         Other       ☐ 550 Civil Rights | ☐ 465 Other Immigration | |         State Statutes |
| | ☐ 448 Education       ☐ 555 Prison Condition |         Actions | | |
| | ☐ 560 Civil Detainee - | | | |
| |          Conditions of | | | |
| |          Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
        Proceeding

☐ 2  Removed from
        State Court

☐ 3  Remanded from
        Appellate Court

☐ 4  Reinstated or
        Reopened

☐ 5  Transferred from
        Another District
        *(specify)*

☐ 6  Multidistrict
        Litigation -
        Transfer

☐ 8  Multidistrict
        Litigation -
        Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); Title VII (42USC2000); Section 1981 (42USC1981); FLSA (29USC201)

Brief description of cause:
Violations of the ADA, Title VII, Section 1981, FLSA, PHRA and applicable state wage laws.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____      DOCKET NUMBER _____

DATE   5/4/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____